[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10113

Non-Argument Calendar

_____

RICHARD A. MARINO,

Plaintiff-Appellant,

*versus*

PHAIDON INTERNATIONAL, INC.,
d.b.a. Selby Jennings,
SELBY JENNINGS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    24-10113

D.C. Docket No. 2:22-cv-14027-AMC

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Richard A. Marino, an engineer and software developer, was working with a recruiting firm, Selby Jennings,[1] to find a new job. With help from Selby Jennings, Marino obtained a job offer from a financial management company, AQR Capital Management. But after confusion about whether Marino had actually earned an undergraduate degree, AQR rescinded the offer. Blaming Selby Jennings for this turn of events, Marino then brought this lawsuit against it alleging, as relevant to this appeal, negligence and tortious interference. The district court granted Selby Jennings's motion to dismiss the negligence claim and its motion for summary judgment on the tortious-interference-with-a-business-relationship claim. After careful consideration of Marino's arguments on appeal, we agree with the district court and affirm.

**I**

Over several months, Marino discussed potential job opportunities with Taylor Eitelberg, a recruiter at Selby Jennings.[2] Soon,

---

[1] Selby Jennings is a business name used in the United States by Phaidon International, a global staffing and recruiting company and the defendant here.

[2] Except where noted, these facts are drawn from the Joint Statement of Material Facts filed in the district court.

Eitelberg alerted Marino to a possible position at AQR Capital Management as a "Senior Microsoft Systems Engineer." Working with Eitelberg, Marino applied for the position and interviewed with AQR. Because a recruiter had connected Marino with the job, Marino had never completed a formal job application, and so eventually Molly Halper, an AQR employee, asked Marino to fill out an application form. The form included a space to "list all schools attended and number of years attended," and another space to "list all degrees awarded." In the first space, Marino indicated that he had attended the University of Miami for four years. In the second, Marino maintained that he typed in "Bachelor of Science in Electrical and Computer Engineering (incomplete)" and "Bachelor of Science in Computer Science (incomplete)."[3] But in the completed application form (reproduced below), all that appeared was "Bachelor of Science in Ele" and "Bachelor of Science in Co."

After receiving the form, AQR offered Marino a position, contingent on Marino passing a background check. He accepted the offer. But when the background check failed to show that Marino

---

[3] Marino asserted this in an email that appeared as an exhibit attached to Selby Jennings's Statement of Material Fact.

had any degrees from the University of Miami, AQR rescinded the job offer.  This diversity suit followed.

## II

Marino brought multiple Florida law tort claims against Selby Jennings—two of which are relevant to this appeal.  First, he argued that Selby Jennings negligently failed to disclose to AQR that, although Marino had attended the University of Miami for four years, he never actually earned a degree.  Second, he asserted that Selby Jennings intentionally and unjustifiably interfered in his business relationship with AQR by "den[ying] that Marino made any communication regarding the absence of his degree from the University of Miami."  Both the negligence and the interference— he alleged—caused Marino to miss out on other job opportunities and to suffer a loss of income and benefits.

The district court rejected Marino's claims.[4]  Initially, Selby Jennings moved to dismiss Marino's complaint.  The district court, adopting a magistrate judge's report and recommendation, dismissed the negligence claim, reasoning that because it was based solely on economic harm, it failed to satisfy the elements required under Florida law.[5]  Following discovery, Selby Jennings moved for summary judgment, which the district court granted.  The

---

[4] Marino also brought a negligent misrepresentation claim that the district court tossed out on summary judgment.  Marino does not challenge that decision on appeal.

[5] An alternative theory that Selby Jennings had engaged in professional negligence also fell short.

24-10113                    Opinion of the Court                    5

district court rejected the tortious-interference claim for two independent reasons:  For one, the substance of Marino's contention was that Selby Jennings had told AQR that it was unaware that Marino's degrees were incomplete—but Marino offered no evidence to support this assertion.  For another, the district court concluded that Florida law required that a defendant in a tortious interference suit must have been a "stranger to the business relationship"—but Selby Jennings was not a "stranger" to the relationship between Marino and AQR.[6]

On appeal, Marino seeks to revive both his negligence and his tortious-interference claims.[7]  Neither effort is successful.[8]

---

[6] Because we ultimately agree with the district court's first ground, we express no view on its interpretation of Florida law on "strangers" to business relationships.

[7] After Marino appealed, this case took a jurisdictional detour.  We remanded the appeal to the district court for clarification about whether there was complete diversity between the parties.  *Marino v. Phaidon Int'l, Inc.*, No. 24-10113, 2024 U.S. App. LEXIS 6915, at *2–3 (11th Cir. Mar. 22, 2024).  Supplemental filings and a second amended complaint clarified that Marino is a citizen of Florida while the defendant, "Phaidon International (U.S.), Inc. d/b/a Selby Jennings," is a citizen of New York because it is incorporated in and has its sole principal place of business in New York.  *See* 28 U.S.C. § 1332(c)(1).  So, the district court concluded that complete diversity existed and returned the case to us.  Satisfied of our jurisdiction, we now consider the merits of Marino's appeal.

[8] Our review of both the district court's grant of the motion to dismiss and grant of summary of judgment is de novo.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  For purposes of the motion to dismiss, we accept the allegations in the complaint as true and construe them in the light most favorable to Marino.  *Id*.  As for summary judgment, we also draw all inferences in the light

6                          Opinion of the Court                     24-10113

### III

### A

A negligence claim under Florida law "must allege four elements: a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). There is usually no duty to avoid causing economic harm. *See Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d Dist. Ct. App. 1999). Instead, "as a general rule, . . . bodily injury or property damage is an essential element of a cause of action in negligence." *Id.* To show that a duty to prevent economic harm existed, there must be an "extraordinary circumstance" or a "special relationship" between the plaintiff and the defendant. *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393–94 (Fla. 2d Dist. Ct. App. 2018); *see Lucarelli Pizza & Deli v. Posen Const., Inc.*, 173 So. 3d 1092, 1094 (Fla. 2d Dist. Ct. App. 2015).

Here, Marino's negligence claim falls short because Selby Jennings had no duty to prevent the economic harm that he suffered. His complaint alleges that he missed out on other jobs and "suffered loss of income and benefits"—not bodily harm or property damage. So, unless there was an extraordinary circumstance or a special relationship, Selby Jennings did not owe Marino a duty to prevent these economic losses. *See Tank Tech*, 244 So. 3d at 393–

---

most favorable to Marino. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017). Summary judgment is appropriate only if there is no genuine issue of material fact and Selby Jennings is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

24-10113                 Opinion of the Court                 7

94.  In the district court, Marino had argued that an exception to the general rule against duties to prevent economic harm applied to him because Selby Jennings was engaged in "professional" services under Florida law.  But on appeal he abandoned that argument, and he does not propose any extraordinary circumstance or special relationship that could rescue him here.[9]

Marino argues that the Supreme Court of Florida's decision in *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013), all but eliminated the rule that there is generally no duty to avoid economic harm.  But *Tiara* considered an entirely different doctrine with a confusingly similar name:  the "economic loss rule."  The "economic loss rule" is not about the duty element of negligence; instead the rule barred liability for economic loss in products liability cases and for parties in privity of contract.  *See id.* at 402–06.  *Tiara* limited the economic-loss rule to product-liability cases, *id.* at 407, which Marino reads as abolishing the general rule that there is no duty to avoid economic harm.  But because "*Tiara* did not address the duty element of negligence claims," it did not create a new "tort duty to avoid causing economic harm where none had existed before." *In re Jan. 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1189 (S.D. Fla. 2022), *aff'd in relevant part*, 76

---

[9] Marino seems to argue in his reply brief that there *is* a special circumstance, citing *Segev v. Lynn Univ., Inc.*, No. 19-CV-81252, 2021 WL 2269838 (S.D. Fla. Feb. 26, 2021), *report and recommendation adopted*, No. 19-81252-CIV, 2021 WL 1996437 (S.D. Fla. May 19, 2021).  But we do not consider this argument because it appeared for the first time in a reply brief.  *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004).

F.4th 1335 (11th Cir. 2023).  Accordingly, even after *Tiara*, courts have continued to reject negligence claims under Florida law that allege economic harm alone, absent extraordinary circumstances or a special relationship.  *E.g.*, *Tank Tech*, 244 So. 3d at 393–94; *Lucarelli Pizza*, 173 So. 3d at 1094–95; *Perry v. Schumacher Grp. of La.*, 809 F. App'x 574, 582 (11th Cir. 2020).  Therefore, *Tiara* does not save Marino's negligence claim, and the district court properly dismissed it.

**B**

Under Florida law, a claim for tortious interference with business relations must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship." *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir. 1987).

Marino fails to carry his summary judgment burden on the second element, "intentional and unjustified interference."  The nub of his tortious-interference argument seems to be that Selby Jennings knew that he had never completed his undergraduate degree, but then told AQR that he had said nothing about his degree being incomplete.  Yet, as Selby Jennings points out, in the joint statement of material facts, Marino conceded quite the opposite: "Selby Jennings informed AQR that Selby Jennings knew of the Incomplete Degrees and thought AQR was aware of the Incomplete Degrees as well."  So, Selby Jennings has satisfied its summary

judgment obligation, and the burden shifts to Marino "to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. June 2024 update). Marino's only rejoinder, though, is his bare intimation that there was, at some point, a phone call between AQR and Molly Halper of Selby Jennings in which Halper failed to disclose that Selby Jennings knew of the incomplete degree. But, as the district court correctly recognized, "there is no evidence of this alleged phone call anywhere in the record." *Marino v. Phaidon Int'l, Inc.*, No. 22-14027-CIV, 2024 WL 147849, at \*6 n.8 (S.D. Fla. Jan. 8, 2024). And on summary judgment, Marino must cite "to particular parts of materials in the record" or show "that the materials cited do not established the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Because Marino has done neither, there is no *genuine* dispute about whether Selby Jennings interfered in Marino's relationship with AQR in the way that Marino asserts. Therefore, summary judgment for Selby Jennings on this claim was appropriate.[10]

## IV

For the foregoing reasons, we hold, first, that Marino has failed to state a claim for negligence under Florida law because he alleged only economic harm and did not properly identify any extraordinary circumstance or special relationship. And, second, we

---

[10] As we affirm on this ground, there is no need to consider Selby Jennings's alternative argument that the tortious interference claim fails because Selby Jennings was not a "stranger" to the relationship between Marino and AQR.

hold that Selby Jennings is entitled to summary judgment on Marino's tortious interference claim because there is no genuine dispute about the fact that Selby Jennings did not interfere with Marino's businesses relationship with AQR.

**AFFIRMED.**